**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| LA COMISION EJECUTIVA | } | |
| HIDROELECCTRICA DEL RIO LEMPA, | } | |
| | } | |
| Movant, | } | |
| | } | |
| VS. | } | MISC ACTION NO. H-08-335 |
| | } | |
| EL PASO CORPORATION, | } | |
| | } | |
| Respondent. | } | |

**OPINION & ORDER**

Presently before the Court are Respondent El Paso Corporation's ("El Paso") Motion for Reconsideration of the Court's August 22, 2008 Order Striking Pleading and, Alternatively, Motion for Leave to File, and, in the Further Alternative, Motion for Reconsideration of July 8, 2008 Order Granting Assistance to Litigant Pursuant to 28 U.S.C. § 1782 Pursuant to Federal Rule 60 (Doc. 12) ("El Paso's Motion"), and Movant Robert Hart's ("Hart") Motion for Protective Order, Motion to Quash, and, Alternatively, Motion for Reconsideration of July 8, 2008 Order Granting Assistance to Litigant Pursuant to 28 U.S.C. § 1782 (Doc. 10) ("Hart's Motion"). Movant La Comision Ejecutiva Hidroelectrica del Rio Lempa ("CEL") has filed a Motion to Compel (Doc. 17) and a Motion for Expedited Consideration of its Motion to Compel (Doc. 19). Having considered these motions, the responses and replies thereto, and all applicable legal standards, and for the reasons explained below, the Court ORDERS that El Paso's Motion is GRANTED, Hart's Motion is GRANTED, CEL's Motion to Compel is DENIED, that CEL's Motion for Expedited Consideration is GRANTED.

I.      **Reconsideration of the August 22 Strike Order**

On August 22, 2008, the Court struck El Paso's Motion for Protective Order, Motion to Quash and, Alternatively, Motion for Reconsideration of July 8, 2008 Order Granting Assistance to Litigant Pursuant to 28 U.S.C. § 1782 (Doc. 8) because the pleading was not properly signed and a courtesy copy had not been delivered to chambers. (*See* Order Striking Document, dated August 22, 2008, Doc. 11). El Paso's Motion (Doc. 12) cures the deficiencies of its prior pleading. The Court, therefore, shall grant this Motion to the extent it requests leave to file a renewed motion and addresses the substantive issues below. The Court denies as moot El Paso's request to vacate the August 22 Order.

II.     **Reconsideration of the July 8 Discovery Order**

In its July 8, 2008 Order (Doc. 2) ("July 8 Order"), the Court granted CEL's Application for an Order Granting Third-Party Discovery for use in a Foreign Proceeding Pursuant to 28 U.S.C. § 1782 (Doc. 1) ("CEL's Application"). Specifically, the Court authorized CEL to issue subpoenas directing El Paso to produce certain documents and witnesses for depositions to use in a pending foreign arbitration occurring between Nejapa Power Company, L.L.C. ("NPC") and CEL in Geneva, Switzerland.

El Paso and Hart claim that the Court lacked the authority to consider CEL's Application, arguing that (1) 28 U.S.C. § 1782 is unavailable to litigants in a private international arbitration like the proceeding between CEL and NPC in Switzerland; (2) even if § 1782 was available, CEL did not satisfy its burden in establishing that such discovery was justified; and (3) the Application was defective because it was procured without notice to either El Paso or NPC. El Paso further objects that the authorized discovery is overly burdensome and otherwise improper. Hart, in his motion, also argues that he is neither an employee nor agent of El Paso,

and, thus, that the discovery order should not include him.  CEL contests all of these arguments and further contends that there are insufficient grounds upon which to correct the Order under the applicable Rule 60(b) standard.

For the reasons set forth below, the Court finds that it erroneously granted its Order to Compel because, under the controlling authority of this Circuit, the discretion to order discovery on behalf of "foreign and international tribunals" under 28 U.S.C. §1782 does not extend to *arbitral* tribunals.  Further, this Court finds that El Paso's motion should properly be considered a motion for relief from a judgment or order under Fed. R. Civ. P.  60 and that the controlling law brought to the Court's attention in El Paso's motion is a sufficient ground under the permissible bases set forth in Fed. R. Civ. P.  60.  The remaining issues before the Court are rendered moot by these determinations and need not be addressed.

A.      Whether the Application was properly granted

Because the Federal Rules of Civil Procedure do not recognize a general motion for reconsideration, a motion for reconsideration should be treated as a motion to alter or amend a judgment under Rule 59(e), if filed within ten days of the challenged ruling or judgment, or as a motion for relief of judgment or order under Rule 60, if filed beyond that time. *Lavespere v. Niagara Mach. & Tool Works*, 910 F.2d 167, 173 (5th Cir. 1990).  Here, El Paso and Hart[1] filed their respective motions more than ten days after the Court issued its ruling. Thus, theirs is a Fed. R. Civ. P. 60 motion for relief from a judgment or order.

Fed. R. Civ. P. 60(b) provides that a district court "may relieve a party . . . from a final judgment, order or proceeding  for . . . (1) mistake, inadvertence, surprise, or excusable neglect, . . . (6) any other reason justifying relief from the operation of the judgment." "The law

---

[1] As Hart is alleged to be an agent of El Paso and as, if discovery is not allowed against El Paso it cannot be allowed against Hart, the Court will consider only El Paso in the ensuing discussion.

of this circuit permits a trial judge, in his discretion, to reopen a judgment on the basis of an error of law." *Federal Deposit Ins. Corp. v. Castle*, 781 F.2d 1101, 1104 (5th Cir. Tex. 1986).  Since Fed. R. Civ. P. 60 grants relief from a judgment *or* order in this respect what is true for a judgment is also true for an order.  To guide the district court's consideration of a Rule 60(b) motion, this Circuit in *Federal Deposit Ins. Corp* prescribed certain factors for consideration:

> (1) That final judgments should not lightly be disturbed; (2) that the Rule 60(b) motion is not to be used as a substitute for appeal; (3) that the rule should be liberally construed in order to achieve substantial justice; (4) whether the motion was made within a reasonable time; (5) [relevant only to default judgments]; (6) whether -- if the judgment was rendered after a trial on the merits -- the movant had a fair opportunity to present his claim or defense; (7) whether there are intervening equities that would make it inequitable to grant relief; and (8) any other factors relevant to the justice of the judgment under attack.

*Federal Deposit Ins. Corp.*, 781 F.2d at 1104. In applying the foregoing factors, the Fifth Circuit has found that, where a legal issue is brought to the district court's attention, the district court should be permitted to grant relief in order to assure a meritorious result.  *Id.*  The issue before this Court is legal, addressing, as it does, only whether § 1782 applies to arbitral tribunals.  It requires no factual development and almost no factual analysis (beyond determining how to treat arbitral tribunals as compared to non-arbitral tribunals.)  Furthermore, as the Fifth Circuit enunciated in *Federal Deposit Ins. Corp,* where the application of the law is clear and the correct result would lead to relief, the duty of the court is to entertain the Rule 60(b) motion.  *Id*.  As discussed *infra*, controlling Fifth Circuit precedent does not allow for the discovery at issue in these Rule 60(b) motions.

It is especially appropriate for the district court to grant relief from its order where, as here, El Paso's motion was made within a reasonable time and where there was no detrimental reliance on the judicial determination.  *Federal Deposit Ins. Corp.*, 781 F.2d at 1104.

The Court issued an order granting CEL's motion to compel on July 8, 2008 and El Paso filed its initial motion on August 13, 2008. Although there are no hard-and-fast rules as to what constitutes a "reasonable time," the Court finds that a Rule 60(b) motion made within this timeframe is reasonable. Further, no intervening equities exist that would make it inequitable to grant relief as no one has detrimentally relied on the Court's order. The order at issue granted CEL the right to compel discovery from El Paso for an upcoming private arbitral proceeding. The Swiss arbitral tribunal itself, however, had imposed a strict scheduling for the production of discovery, ordering, in its Procedural Order No.2, that discovery was not to occur until after the first round of written submissions due on October 31, 2008. *See* Doc. 12 Exh. 6 at ¶25-28; *See also* Doc.19 Exh. 2 at ¶2. The purpose of this was twofold according to the tribunal. First, the prior briefing would encourage "focused and relevant" discovery. *See,* Doc. 12 Exh. 6 at ¶28. Second, the prior briefing would allow the tribunal to better determine discovery disputes. *Id.* In light of this schedule, the tribunal found that "the Arbitral Tribunal would not have authorized [CEL] with its Texas and Delaware Applications [for discovery] had it been requested to do so." *See* Doc. 12 Exh. 6 at ¶30. Thus, any discovery provided would not have been admissible before the tribunal until very recently, if at all. Furthermore, discovery, coming as it does at the beginning of the litigation process does not engender the kind of reliance that might cause inequity, as compared to judgments, for example. Finally, to date, El Paso has not complied with any of the requested discovery, and, as such, CEL cannot have relied on any information gained yet in its preparation for the upcoming arbitration. *See*, Doc.17 at page 5.

Thus, the Court concludes that it is appropriate to consider EL Paso's application for Rule 60(b) relief. We now turn to that examination.

B.    Whether 28 U.S.C. § 1782 applies to private, international arbitrations

Section 1782 states, in relevant part, as follows:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court . . .

28 U.S.C. § 1782(a).  Prior to 2004, the prevailing view was that § 1782 did not encompass private, international arbitration proceedings.  Indeed, the Fifth Circuit expressly held that § 1782 does not apply to international arbitration proceedings in *Republic of Kazakhstan v. Biedermann Int'l*, 168 F.3d 880, 883 (5th Cir. 1999).  In 2004, however, the Supreme Court decided *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), which broadened the scope of § 1782.  On the basis of the *Intel* decision, some courts have concluded that § 1782, particularly the wording "foreign and international tribunal," applies in private, international arbitration proceedings.  *In re Roz Trading Ltd.*, 469 F. Supp. 2d 1221 (N.D. Ga. 2006); *In Re Application of Hallmark Capital Corporation*, 534 F. Supp. 2d 951 (D. Minn. 2007.)  Thus, relying on these recent lower court decisions, CEL contends that the Supreme Court in *Intel* gave the green light to district courts to grant discovery requests to parties before foreign or international arbitral tribunals under § 1782.

The Court disagrees.  The Supreme Court in *Intel* shed no light on the issue.  In fact, the Supreme Court has not addressed the application of § 1782 to arbitral tribunals, not even in *dicta*.  *Intel* never mentions arbitral tribunals in the text of the opinion itself.  Instead it deals with the application of § 1782 to a proceeding before the Directorate-General for Competition (D-G Competition) of the Commission of the European Communities (European Commission or Commission), which enforces European competition laws and regulations.  *Intel Corp.*, 542 U.S. at 246.  *Intel* broadened the scope of § 1782's "foreign and international tribunals" only so far as

to clarify that it applied not only to court proceedings but also to proceedings before the D-G Competition.  The Supreme Court placed emphasis on the fact that the party seeking discovery in that case had "significant procedural rights . . . [m]ost prominently, the [party] . . . *may seek judicial review of the Commission disposition of a complaint*."  *Id*. at 255 (emphasis added). Thus, because the party could seek review of the D-G Commission's determination before a court, in this case the Court of First Instance and European Court of Justice, and the D-G Commission, much like an administrative agency here in the United States, acted as a "first-instance decisionmaker," it too was in the eyes of the Court a "tribunal."  *Id*. at 258.  Following the emphasis of *Intel* then, the fact that the D-G Commission acted as a quasi-adjudicative proceeding before review by true judiciary powers makes it an animal of a very different stripe from an arbitral tribunal. An arbitral tribunal exists as a parallel source of decision-making to, and is entirely separate from, the judiciary, which was not the case with the D-G Competition as the Court was at pains to point out in *Intel*.

Consequent with *Intel*'s line of direction, it comes as no surprise that arbitral tribunals make not so much as a cameo appearance, but more that of an "extra" in *Intel*'s consideration of the scope of § 1782 tribunals.  The Supreme Court further argued that the D-G Commission should be considered a § 1782 tribunal because Congressional pronouncements antecedent to the 1964 revision of § 1782 meant 'tribunal' to possibly apply to "administrative and quasi-judicial proceedings abroad."  *Intel Corp.*, 542 U.S. at 257-58.  As further support on this point, and only on this point, the Court cited Hans Smit ("Smit"), *International Litigation under the United States Code*, 65 Colum. L. Rev. 1015 (1965), which stated: "[t]he term 'tribunal' . . . includes investigating magistrates, administrative and arbitral tribunals, and quasi-judicial agencies, as well as conventional civil, commercial, criminal, and administrative courts."

7

*Id.* at 258.   Here lies the trap for the unwary traveler.   Because in between agreeing with Congress' report that § 1782 applied to administrative and quasi-judicial agencies Smit, not Congress, and not the Supreme Court, was of the opinion § 1782 also applied to arbitral tribunals.   The Supreme Court gave no indication they agreed with Smit on this issue, now before the district court.

The Supreme Court was only making use of this quoted sentence from the article for the proposition that § 1782 applies to quasi-judicial agencies and administrative courts, following as it did the Court's actual quoting of Congressional pronouncements in the text of the opinion itself to the same effect.   Smit does not speak for the Supreme Court.   Until, and, if, the Supreme Court itself adopts Hans Smit's statements as its own within the text of the opinion itself, Hans Smit's opinions on arbitral tribunals has no more weight and authority than any other article.   Smit's opinion is not even Supreme Court *dicta*.   *Contra, In re Roz Trading Ltd.,* 469 F. Supp. 2d at 1224 (Finding that the Court in *Intel* indicated in *dicta* that arbitral tribunals were "foreign and international tribunals" under section 1782)*; c.f., In re Application of Hallmark Capital Corp.,* 534 F. Supp. 2d at 955 ("[The Court in *Intel*'s] expansive approach suggests that the Court would not restrict the scope of "tribunal" to necessarily preclude assistance for use in private arbitrations.")

In stark contrast to the opinion of one article appearing incidentally in a Supreme Court decision, the Fifth Circuit has tackled the issue squarely, holding that "the term 'foreign or international tribunals' in § 1782 was not intended to authorize resort to United States federal courts to assist discovery in private international arbitrations." *Biedermann Int'l*, 168 F.3d at 883.   Finding that the plain meaning of "tribunals" was ambiguous under § 1782, this Circuit based its holding on the background and purpose of § 1782.   *Id.* at 881.   In its own procedural

orders, the Swiss arbitral tribunal refers to itself as an "Arbitral *Tribunal*."  *See*, Doc. 12 Exh. 6 at ¶1 (emphasis added).  As indicated *supra*, the Supreme Court left this ambiguity for another day.  On the other hand, in *Biedermann Int'l,* the Fifth Circuit has spoken precisely on this issue and resolved that ambiguity against use of § 1782 for arbitral tribunals.  Thus, the course charted for this court is clear.

It is true that the Supreme Court found it of note that Congress was "prompted by the growth in international commerce" to expand the scope of § 1782 with its 1964 amendment. *Intel Corp.*, 542 U.S. at 248.  Globalization has increased the growth in international commerce since Congress amended § 1782 in 1964, and this growth has continued since the Fifth Circuit limited the reach of § 1782 in *Biedermann Int'l* in 1999.  The Supreme Court may yet be moved by the stronger gravitational pull of international comity, concomitant with international commerce, to apply § 1782 to arbitral tribunals.  On the other hand, as the Fifth Circuit argued in *Biedermann Int'l,* the Court may find it determinative that "[a]rbitration is intended as a speedy, economical, and effective means of dispute resolution," and, thus, that extensive discovery through federal courts would harm, rather than benefit, international comity.  *Biedermann Int'l*, 168 F.3d at 883; *See also*, Anna Conley, *A New World of Discovery: The Ramifications of Two Recent Federal Courts' Decisions Granting Judicial Assistance to Arbitral Tribunals Pursuant to 28 U.S.C. § 1782*, 17 Am. Rev. Int'l Arb. 45, 46 (2006) ("Giving parties to international arbitrations access to judicial assistance pursuant to § 1782 will undermine many of the policies underlying arbitration, including freedom to contract, reduced cost, efficiency and the arbitrator's ability to control discovery.") Certainly, it seems significant that in the case before us the Swiss arbitral tribunal itself would have refused CEL's attempt to gather discovery in the United States had it had the authority to do so.  *See* Doc. 12 Exh. 6 at ¶30.  The Swiss arbitral tribunal had

placed both parties before it on a schedule that prohibited almost all discovery until after submission of initial briefs in order to focus the discovery when it did occur and to make the arbitral panel's task easier in preventing unnecessary discovery by relying on the initial briefing. *See* Doc. 12 Exh. 6 at ¶25-28; *See also* Doc.19 Exh. 2 at ¶2.  By seeking discovery from El Paso before submission of its briefs to the Swiss arbitral tribunal, CEL sought to evade the benefits of "speedy, economical, and effective" arbitration by engaging in lengthy trench warfare.

        The Swiss arbitral tribunal's view of the requested discovery is relevant under the Supreme Court's decision in *Intel*.  The Supreme Court in *Intel* said that even where there was discretionary authority to order discovery under §1782 the district court should take into account the "receptivity of the [tribunal] . . . abroad to U.S. federal-court judicial assistance" in deciding whether or not to exercise that discretion.  *Intel Corp.*, 542 U.S. at 264.  Thus, even if the Court had power to order discovery, it would not, out of respect for the efficient administration of the Swiss arbitration.  As it is, though, this Court finds that, under the controlling precedent of *Biedermann Int'l*, the Court has no power to grant CEL's application for discovery either from El Paso or Hart.

III.    <u>Conclusion</u>

        For the foregoing reasons, the Court hereby

        ORDERS that its July 8 Order (Doc. 2) is VACATED.  The Court further

        ORDERS that any discovery by CEL from El Paso or Hart related to the ongoing arbitration between CEL and NPC before the Swiss arbitral tribunal is QUASHED.  The Court further

ORDERS that El Paso's "motion to reconsider," (Doc. 12) more properly termed a Fed. R. Civ. P. 60(b) motion for relief from a judgment or order is GRANTED, The Court further

ORDERS that Hart's "motion to reconsider" (Doc. 10) more properly termed a Fed. R. Civ. P. 60(b) motion for relief from a judgment or order is GRANTED,

SIGNED at Houston, Texas, this 20th day of November, 2008.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE